UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

----------------------------------
CLAIRE HICKEY AND AKIRA ) 
KIRKPATRICK, *on behalf of themselves and all* ) Case No.  2:20-CV-690
*others similarly situated* )
 )
 PLAINTIFFS, )
 ) **CLASS ACTION COMPLAINT**
V. ) **AND DEMAND FOR JURY**
 ) **TRIAL**
UNIVERSITY OF PITTSBURGH )
 )
 DEFENDANT )
----------------------------------

Plaintiffs, Claire Hickey and Akira Kirkpatrick ("Plaintiffs"), by and through their undersigned counsel, bring this action against Defendant, University of Pittsburgh (the "University" or "Defendant"), and allege as follows based upon information and belief, except as to the allegations specifically pertaining to them, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of all persons who paid to attend the University of Pittsburgh as full-time undergraduate students enrolled for the Spring 2020 semester at its main campus in Pittsburgh, Pennsylvania ("Pittsburgh Campus"). Such persons paid all or part of the tuition for this semester that ranged from approximately $18,098 - $41,508; housing and dining fees of, on average, approximately $11,814 (if they lived in University housing), and three mandatory fees for the semester including a Student Activity Fee of $100.00, a Wellness Fee of $180.00, and a Security, Safety and Transportation Fee of $90.00 (collectively, "Mandatory Fees"). The University of Pittsburgh has not refunded any amount of the tuition, housing and dining fees (for those who moved out of University housing after April

3, 2020) or any of the Mandatory Fees, even though it has implemented on-line distance learning since March 23, 2020 and also, on or about that date, stopped providing any of the services or facilities the Mandatory Fees were intended to cover because of the University's response to the Coronavirus Disease 2019 ("COVID-19") pandemic. The University has also determined not to charge any of the Mandatory Fees for its Summer 2020 session which will also be conducted on-line.

2. The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 23, 2020 is a breach of the contracts between the University and Plaintiffs and the members of the Class, and is unjust.

3. The University only provided prorated refunds to students for housing and dining who vacated their campus housing on or before April 3, 2020. Those students who did not move out of University housing until after April 3 should also be entitled to a prorated refund.

4. In short, as to tuition, Plaintiffs and the members of the Class have paid for tuition for a first-rate education and educational experience, with all the appurtenant benefits offered by a first-rate university, and were provided a materially deficient and insufficient alternative, which alternative constitutes a breach of the contracts entered into by Plaintiffs and the Class with the University. As to Mandatory Fees, Plaintiffs and the Class have paid fees for services and facilities which are simply not being provided; this failure also constitutes a breach of the contracts entered into by Plaintiffs and the Class with the University.

5. Plaintiffs seek, for themselves and Class members, the University's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time that remained in the Spring Semester 2020 when the University closed and switched to online distance learning or, in the case of housing and dining, for any members of the Class that

moved out of University housing after April 3, 2020, a prorated portion of the housing and dining fee for the days left in the semester after they moved out.

## PARTIES

6. (a) Plaintiff Claire Hickey is a citizen of Pennsylvania. She paid to attend the Spring 2020 semester at the University's Pittsburgh Campus as a full-time undergraduate student. Plaintiff Claire Hickey paid tuition for the Spring 2020 semester and the Mandatory Fees to enable her to obtain an in-person, on-campus educational experience and enable her to participate in the activities and to utilize the services covered by the Mandatory Fees that she paid. She has not been provided a pro-rated refund of the tuition or the Mandatory Fees she paid.

(b) Plaintiff Akira Kirkpatrick is a citizen of Pennsylvania. She paid to attend the Spring 2020 semester at University's Pittsburgh's Campus as a full-time undergraduate student. Plaintiff Akira Kirkpatrick paid tuition for the Spring 2020 semester and the Mandatory Fees to enable her to obtain an in-person, on-campus educational experience and enable her to participate in the activities and to utilize the services covered by the Mandatory Fees that she paid. She has not been provided a pro-rated refund of the tuition or the Mandatory Fees she paid.

7. Defendant, the University of Pittsburgh, is a state-related but private research university in Pittsburgh, Pennsylvania that was founded as the Pittsburgh Academy in 1787. The University offers numerous major fields for undergraduate students, as well as a number of graduate programs. Defendant's undergraduate program includes students from many, if not all, of the states in the country. Its principal campus is located in Pittsburgh, Pennsylvania. Defendant is a citizen of Pennsylvania.

**JURISDICTION AND VENUE**

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

9. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

**FACTUAL ALLEGATIONS**.

11. Plaintiffs and Class Members paid for themselves or for full-time students to attend the University of Pittsburgh Spring 2020 semester at its Pittsburgh Campus including tuition, housing and dining (if they lived on campus) and the Mandatory Fees for the Spring 2020 Semester at the University. The Spring 2020 semester at the University began on or about January 6, 2020. The Spring 2020 semester ended on or around April 25, 2020.

12. Tuition costs at the University at its Pittsburgh Campus for the Spring 2020 Semester for a full-time undergraduate student were as follows:

|  | Full-time In-State Tuition | Full-time Out-of-state Tuition |
| --- | --- | --- |
| Kenneth P. Dietrich School of Arts and Sciences | $18,628 | $32,656 |

| | | |
|---|---|---|
| College of Business Administration | $20,806 | $36,792 |
| Swanson School of Engineering | $20,662 | $37,060 |
| School of Nursing | $23,452 | $41,508 |
| School of Dental Medicine (Undergraduate) | $18,098 | $32,498 |
| School of Education | $18,628 | $32,656 |
| College of General Studies | $18,628 | $32,656 |
| School of Health and Rehabilitation Sciences | $23,452 | $41,508 |
| School of Computing & Information | $20,456 | $35,952 |
| School of Pharmacy | $32,770 | $37,678 |
| School of Social Work | $18,628 | $32,656 |

13. Plaintiffs and the members of the Class paid all or part of the applicable tuition for the benefit of on-campus live interactive instruction and an on campus educational experience throughout the entire Spring 2020 semester.

14. Housing and dining at the University of Pittsburgh for the Spring 2020 semester cost, on average, approximately $11,814. The members of the Class who lived on campus during the Spring 2020 semester paid the applicable cost for the benefit of on-campus housing and meals throughout the entire semester.

15. Plaintiffs and the members of the Class paid the Mandatory fees for the Spring 2020 semester so they could benefit throughout the Spring 2020 semester as follows:

a. from paying the Student Activity Fee,

- programs and services for undergraduate students including the Pitt Program Council, WPTS-FM Radio, the Student Office of Sustainability, the Office of PittServes, the Student Organization Resource Center and the Student Government Board;

b. from paying the Wellness Fee,

- access to Student Health Services, a campus facility staffed by medical doctors, psychiatrists, nurses, and nurse practitioners. some additional services provided by Student Health services—such as dietary counseling—which are not otherwise covered by health insurance. The fee also covers the co-pay that is required by health insurance with each visit. the University's Counseling Center, staffed by psychologists, counselors, social workers, and other mental health care professionals;

- access to the University's Counseling Center;

- access to Campus Recreation facilities, including the Baierl Recreation Center, Pitt Sports Dome, Trees Hall, and Bellefield Hall, among others; and

- access to intramural and club sports programs, as well as recreation and fitness programs, services, and activities.

c. from paying the Student Recreation Fee,

- campus transportation services including shuttles, expanded handicapped/disabled transport services, a night on-call van service, an on-call escort service, and security lighting, the University's Campus Recreation facilities, including the Baierl Recreation Center, Pitt Sports Dome, Trees Hall, and Bellefield Hall, and intramural and club sports programs, as well as recreation and fitness programs, services, and activities;

d. from paying the Security, Safety and Transportation Fee,

- the University's campus transportation services including shuttles, expanded handicapped/disabled transport services, a night on-call van service, an on-call escort service, and security lighting.

6

***<u>In Response to COVID-19, the University Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes</u>***

16. On March 11, 2020, during the University's Spring Recess, the University announced that it was extending the Spring Recess, canceling all classes the week of March 16, 2020, and transitioning to remote online courses for the remainder of the Spring 2020 Semester beginning March 23, 2020. It further canceled all campus events for the foreseeable future and suspended all spring varsity athletic practices and games until further notice. It encouraged students not to return to campus following their extended Spring Recess.

17. Specifically, on March 11, 2020, University of Pittsburgh Chancellor Patrick Gallagher issued a new university-wide letter that stated in pertinent part that:

> The pandemic has already forced us to take a number of proactive steps. These include recalling students, faculty and staff from hard hit parts of the world; canceling study abroad programs; canceling or postponing certain events; expanding public health communication; and enhancing cleaning efforts to minimize potential exposure.
>
> [. . .]
>
> The steps that we are now taking include:
>
> - Replacing in-person instruction with online and alternative learning options at all five Pitt campuses.
> - Requesting that students not return to University housing, if they have this option.
> - Canceling all study abroad and study away programming for the spring and summer terms.
> - Restricting all nonessential domestic and international university travel until further notice.
> - Canceling or postponing all events that exceed 25 participants or that are considered nonessential. When possible, we will seek to replace in-person events with virtual engagements.
> - Expanding work flexibility to allow remote work arrangements, when needed.
>
> To prepare for this transition and give our faculty time to contact students directly, we are postponing the start of classes to Monday, March 23, 2020.
>
> These changes, which will be effective through the end of the current semester, mean that distance learning strategies will replace all face-to-face classes in satisfying the academic

requirements toward a student's degree. As a result, there is <u>no immediate need</u> for most undergraduate students to return to campus after spring break concludes.

18. The University has not held any in-person classes since March 6, 2020, which was just before the commencement of its Spring Recess that was initially scheduled to end on March 15, 2020. Classes that have continued since March 16, 2020 have only been offered in a remote online format with no in-person instruction or interaction. Even classes for students with concentrations in areas where in-person instruction and laboratory time is especially crucial have only had access to sub-par online educational options.

19. On March 17, 2020, University of Pittsburgh spokesman Kevin Zwick stated that "Students who are moving out of the residence halls by April 3, 2020, will receive a pro rata reduction of housing and meal plan fees on their student account," Specifically, he stated that "Those moving out by March 20 are to receive a 36% refund; those who move out between March 21 and April 3 . . . receive 30%, and those after that do not receive a refund.''

20. The next day, on March 18, 2020, Chancellor Gallagher announced that the University would be closing "many on-campus academic support facilities, except to specific personnel. These changes will affect access to nearly all of the remaining shared facilities, such as libraries, recreational facilities, computer labs, study areas and group spaces, that are currently available to University faculty, staff and students."

21. Chancellor Gallagher subsequently announced on March 20, 2020, that the University had limited its campus operations and ceased non-essential services, and that the University of Pittsburgh building access was limited to those with essential activities.

22. Specifically, with regard to the services the Wellness Fee was intended to cover,

- Effective March 19, 2020, the Student Health Service no longer provided in-person visits and while telehealth services were continued to be provided, only if paid for by health insurance,

8

- Effective March 20, 2020, all Campus Recreation facilities, including the Baierl Recreation Center, Pitt Sports Dome, Trees Hall, and Bellefield Hall, among others were closed, and

- Effective March 20, 2020, all intramural and club sports programs, as well as recreation and fitness programs, services, and activities were closed.

23. The services for which the Student Activity Fee and Security, Safety and Transportation Fee were assessed were also terminated at or about this time.

24. On or around April 16, 2020, in tacit acknowledgement that not rebating a pro-rata portion of the Mandatory Fees was improper for the period when there were no on-campus activities and only distanced on-line learning, the University announced that it would waive the Mandatory Fees across all campuses for students enrolled in courses during summer 2020 sessions:

***The University's Online Courses Are Subpar to In-Person Instruction, For Which Plaintiffs and the Class Members Contracted with the University to Receive by Paying Tuition and Fees***

25. Students attending the University of Pittsburgh's Spring 2020 semester at its Pittsburgh Campus did not choose to attend an online institution of higher learning, but instead chose to enroll in the University's in-person educational program.

26. On its website, the University markets the University's on-campus experience as a benefit of enrollment:

9

## Admissions



**Eliza Schally, bioengineering, Class of 2019**

"Pitt has a great sense of community. It's not competitive, people don't step all over each other to get to the top. There is also a great sense of pride; we know Pitt has a great reputation and we work hard to uphold that."



**Undergraduate Admissions**

With more than 60 percent of classes enrolling fewer than 30 students, Pitt undergraduates get to interact with some of the world's finest professors. And Pitt is one of the country's most consistent producers of top-performing undergraduates, including four Rhodes Scholars since 2007. Read More »

## Admissions



**Dylan Woods, nursing, Class of 2020**

"Our campus has the perfect mix. It has both a strong community and an intense academic drive. If you are interested in something — inside or outside the classroom — Pitt has it available for you."



**Cole Bryan, computer science, Class of 2020**

"I love the atmosphere of Pitt's campus. We have a strong sense of pride and we are also very collaborative. Students want to help each other, and we have a great sense of community."



27. The online learning options being offered to the University's students are sub-par in practically every aspect as compared to what the educational experience afforded Plaintiffs and the members of the Class once was. During the on-line portion of the Spring 2020 semester, the University principally used programs by which previously recorded lectures were posted on-line for students to view on their own. *See* https://teaching.pitt.edu/#Teach. Therefore, there was a lack of classroom interaction among teachers and students and among students that is instrumental in interpersonal skill development. Further, the on-line formats being used by the University of Pittsburgh do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

28. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

29. Access to facilities such as libraries, laboratories, computer labs, and study rooms, are also integral to a college education, and access to the myriad activities offered by campus life fosters social development and independence, and networking for future careers, all substantial and materials parts of the basis upon which the University of Pittsburgh can charge the tuition it charges, are not being provided.

30. The University has not made any refund of any portion of the tuition Plaintiffs and the members of the Class paid for the Spring 2020 semester for the period it moved to subpar on-line distance learning.

31. Nor has the University refunded any portion of the Mandatory Fees it collected from Plaintiffs and the members of the Class for the Spring 2020 semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay and even though the University has determined not to charge any of the Mandatory Fees for the Summer 2020 session because teaching will be conducted by off-campus on-line learning.

32. There are also members of the Class who were unable to leave the campus prior to April 4, 2020. These members of the Class should not be penalized by the University and are entitled to a pro-rata refund of housing and dining charges for the remaining days of the Spring 2002 semester after these students left.

33. Plaintiffs and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester and any students who were unable to leave the campus prior to April 4, 2020 should be entitled to a pro-rata refund of housing and dining charges that they paid or were paid on their behalf for the Spring 2020 semester for the remaining days of that semester after they left the campus.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as all persons who paid tuition and/or the Mandatory Fees for a student to be enrolled as a full-time undergraduate in the Spring 2020 semester at University of Pittsburgh's Pittsburgh Campus (the "Class").

35. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

36. The requirements of Rule 23(a)(1) have been met. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiffs, the University has reported that 19,200 undergraduate students currently attend its Pittsburgh Campus. The identity of all such students is known to the University and can be identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

37. The requirements of Rule 23(a)(2) have been met. There are questions of law and fact common to the members of the Class including, without limitation:

   a. Whether the University accepted money from Plaintiffs and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the Spring 2020 semester;

   b. Whether Defendant breached its contracts with Plaintiffs and the members of the Class by failing to provide them with an in-person and on-campus live education after March 15, 2020;

   c. Whether Defendant breach its contracts with Plaintiffs and the by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

   d. Whether Defendant breached its contracts with members of the Class by requiring them to leave the University housing they had paid for by April 3 or forfeit any refund; and

  e. The amount of damages and other relief to be awarded to Plaintiffs and the Class members.

38. The requirements of Rule 23(a)(3) have been met. Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fees that they paid, that the University stopped providing in mid-March.

39. The requirements of Rule 23(a)(4) have been met. Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained competent counsel who are experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

40. Class certification of Plaintiffs' claims is also appropriate pursuant to Rule 23(b)(3) because the above questions of law and fact that are common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University. It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the

court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

**FIRST CLAIM FOR RELIEF**

**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

41. Plaintiffs repeat and re-allege the allegations in Paragraphs 1-30, above, as if fully alleged herein.

42. Plaintiffs bring this claim individually and on behalf of the members of the Class.

43. By paying the University tuition and Mandatory Fees for the Spring 2020 semester, the University agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory fees they paid pertained throughout the Spring 2020 semester. As a result, Plaintiffs and each member of the Class entered into binding contract with the University.

44. The University has failed to provide this contracted for in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees pertained throughout the Spring 2020 semester, yet has retained monies paid by Plaintiffs and the Class for a live in-person education and access to these services and facilities during the entire Spring 2020 semester. Plaintiffs and the members of the Class have therefore been denied the benefit of their bargain.

45. Plaintiffs and the members of the Class have suffered damage as a direct and proximate result of the University's breach in the amount of the prorated portion of the tuition and Mandatory Fees they each paid during the remaining approximately 35 days of the Spring

semester (calculated from March 16, 2020 when the campus was closed to most students), as well as any unused housing and meal plans for those Class members who moved out on or after April 4, 2020.

46. The University should return such portions to Plaintiffs and each Class Member.

## SECOND CLAIM FOR RELIEF

### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class)

47. Plaintiffs repeat and re-allege the allegations in Paragraphs 1-30, above, as if fully alleged herein.

48. Plaintiffs bring this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief.

49. Plaintiffs and members of the Class conferred a benefit on the University in the form of tuition and Mandatory Fees paid for the benefit of an in-person and on-campus live education and the services and facilities to which the Mandatory Fees pertained. The payment of tuition and Mandatory Fees for the Spring 2020 semester were intended to provide these benefits to Plaintiffs and the members of the Class throughout the Spring 2020 semester. Similarly, the payment of University housing and dining fees for the Spring 2020 semester conferred a benefit on the University that was intended to provide housing and dining for such students throughout the Spring 2020 semester.

50. The University has retained the full benefit of the tuition and Mandatory Fee payments by Plaintiffs and the members of the Class for the Spring 2020 semester, yet has failed to provide the quality of education and services and facilities for which tuition and the Mandatory Fees were paid, including those for an in-person and on-campus live education, and access to the University's services and facilities. In addition, the University has retained the full

benefit of the housing and dining fees paid by those Class members who were unable to move out of University housing on or before April 3, 2020.

51. The University's retention of the portion of the tuition and Mandatory Fees during the period of time the University has been closed, and Plaintiffs and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees were paid, is unjust and inequitable under the circumstances. Similarly, the University's retention of the portion of the value of housing and dining fees following move outs by Class members after April 3, 2020 is also unjust and inequitable.

52. Accordingly, the University should return the prorated portion of the tuition and Mandatory Fees that Plaintiffs and the Class members each paid during the remaining 35 days of the Spring 2020 semester (calculated from March 16, 2020 when the campus was closed to most students) as well as any unused housing and meal plans for those who were unable to move out of University housing by April 3, 2020.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that judgment be entered in favor of Plaintiffs and the Class against Defendant as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order of restitution and all other forms of equitable monetary relief;

(e)     Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

(f)     Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)     Awarding such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to the Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: May 8, 2020

Respectfully submitted,

*s/ Gary F. Lynch*
Gary F. Lynch
Edward W. Ciolko
Kelly K. Iverson
**CARLSON LYNCH LLP**
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
P (412) 322-9243
F. (412) 231-0246
E. glynch@carlsonlynch.com
   eciolko@carlsonlynch.com
   kiverson@carlsonlynch.com

Jeffrey A. Klafter
Seth R. Lesser
**KLAFTER OLSEN & LESSER LLP**
2 International Drive, Suite 350
Rye Brook, New York 10601
T. (914) 934-9200
F. (914) 934-9220
E. jak@klafterolsen.com
   seth@klafterolsen.com

*Counsel for Plaintiffs and Proposed Class*