IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLAIRE HICKEY, et al,

*Plaintiffs*,

v.

UNIVERSITY OF PITTSBURGH,

*Defendant*.

Civil Action No. 2:20-cv-690

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs, Claire Hickey, Akira Kirkpatrick, Valeri Natoli, Candace N. Graham, Nicholas Bowes, and Carly Swartz, on behalf of themselves and all others similarly situated, filed this action against Defendant, University of Pittsburgh ("the University"), alleging breach of contract, unjust enrichment, and conversion. (ECF No. 13). The University filed a Motion to Dismiss for Failure to State Claims under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 25). For the reasons set forth below, the University's Motion to Dismiss (ECF No. 25) will be granted.

## I.   BACKGROUND

Plaintiffs are undergraduate students who paid to attend the University for the Spring 2020 semester. (ECF No. 13, ¶¶ 19, 20). On March 6, 2020, Governor Tom Wolf declared a "Disaster Emergency" in response to the COVID-19 global pandemic. Approximately five days later, the University announced it was transitioning to remote online courses for the remainder of the Spring 2020 semester. (ECF No. 13, ¶ 27). The University's Chancellor, Patrick Gallagher, issued a university-wide letter explaining that the pandemic forced the University to take proactive

1

measures to minimize potential exposure, and subsequently announced that the University was limiting its campus operations and ceasing non-essential services. (ECF No. 13, ¶¶ 28, 31). The University did not hold in-person classes for the remainder of the Spring 2020 semester. (ECF No. 13, ¶ 34).

According to Plaintiffs, the University's online learning options are "subpar" to the in-person instruction and "are different in practically every aspect as compared to what the educational experience afforded Plaintiffs and the members of the Class once was." (ECF No. 13, ¶ 39). Plaintiffs also claim that the University's websites, promotional materials, circulars, admission papers, and publications were used to tout the benefit of being on campus and the education and opportunities students would receive at its facilities. (ECF No. 13, ¶ 38). Plaintiffs allege that they entered into a binding contract with the University by paying tuition, housing and dining fees (if living on campus), and Mandatory Fees for the Spring 2020 semester. (ECF No. 13, ¶ 57). Once Plaintiffs made these payments, they allege that the University agreed to, among other things, provide an in-person and on-campus live education, housing and dining options, as well as the services, and facilities to which the Mandatory Fees they paid pertained throughout the Spring 2020 semester. (ECF No. 13, ¶ 57). The University's transition to online instruction failed to provide the promised in-person and on-campus live education, services and facilities and allegedly deprived Plaintiffs of the benefits for which the tuition and fees were paid. (ECF No. 13, ¶¶ 59, 78).

The University did not refund any portion of the tuition or fees Plaintiffs paid for the Spring 2020 semester for the period it closed campuses and moved to online distance learning. (ECF No. 13, ¶¶ 44, 45). The University provided, however, prorated refunds for fees specifically related to housing and dining to students who vacated their campus housing on or before April 3, 2020.

(ECF No. 13, ¶ 5).  Plaintiffs bring this action on behalf of all persons who paid tuition and fees for a student to attend in-person classes during the Spring 2020 semester, but had their classes moved to online learning and access to on-campus services and facilities limited or barred.  (ECF No. 13, ¶ 48).  Plaintiffs request relief in the form of pro-rated refunds of the tuition and fees they paid for the Spring 2020 semester.  (ECF No. 13, ¶ 47).

## II.  STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Although a Court must accept a plaintiff's allegations as true, it is "not compelled to accept 'unsupported conclusions and unwarranted inferences,' or 'a legal conclusion couched as a factual allegation.'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement, but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555.  Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.  Even if the complaint's well-pleaded facts give rise to a plausible inference, that inference alone will not

entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If matters outside the pleadings are presented to, and not excluded by, the court, the motion must be converted to a motion for summary judgment. FED. R. CIV. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment as long as they are integral to the allegations in the complaint and are indisputably authentic. *Fallon v. Mercy Catholic Med. Ctr. of Se. Penn.*, 877 F.3d 487, 493 (3d Cir. 2017).

### III.   ANALYSIS

#### A. Breach of Contract

The University argues that Plaintiffs' breach of contract claim fails as a matter of law because Plaintiffs' claims are contradicted by the University's Financial Responsibility Agreement ("the Agreement"). It contends that Plaintiffs have not identified a specific contractual term of that Agreement or any other document the University has breached, and the Court should not entertain a claim requiring an analysis of educational quality. The Court agrees with the University that Plaintiffs have failed to plead a plausible claim for breach of contract.

Plaintiffs' claim fails because it does not identify any specific contractual promise that the University allegedly breached with respect to in-person instruction, tuition, fees, or any other costs. It is well settled under Pennsylvania law that breach of contract claims against universities must be based on a clear, written promise. *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. 1999) (finding breach of contract claim cannot stand without an identification of the specific contractual

4

terms allegedly breached by the school).   It is hornbook law that a breach of contract claim requires: 1) the existence of a contract and its terms; 2) a breach of the duty imposed by the contract; and 3) damages that resulted. *McShea v. City of Philadelphia*, 995 A.2d 334 (Pa. 2010). The allegations in a student's breach of contract claim must relate to a specific and identifiable promise that the school failed to honor. *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011).

The University argues that the Agreement is the controlling contract at issue.   (ECF No. 26).   However, the Agreement, alone, is not enough because there are no specific terms that are identified as the parties' contract vis-à-vis the claims that they raise in this action.   Plaintiffs do not dispute that they entered into the Agreement or that the University followed the Agreement's plain terms throughout the Spring 2020 semester.   It is well settled that where an express written agreement has been validly entered into by both parties, a party may not allege that an implied contract exists as to terms in the written agreement. *Baer v. Chase*, 392 F.3d 609, 616–17 (3d Cir. 2004).   If the parties have entered into a valid written agreement, it is Plaintiffs' burden to show that the alleged implied contract is "entirely unrelated" to that agreement. *Turkmenler v. Almatis, Inc.*, No. 11-1298, 2012 WL 1038866, at *3 (W.D. Pa. Mar. 28, 2012); *see also Slavko Props., Inc. v. T.D. Bank, N.A.*, No. 14-05045, 2015 WL 1874233, at *12 (E.D. Pa. Apr. 24, 2015) ("The language of the written agreement, not Plaintiffs' mischaracterization, controls.").   Additionally, the Federal Rules of Civil Procedure provide that a court may rely upon a document that is integral to the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). *See also Avicolli v. Gov't Emps. Ins. Co.*, No. 2:10-CV-02858, 2010 WL 8981369, at *2 (E.D. Pa. Oct. 27, 2010) (considering contract not attached to complaint because it was integral to breach

claim); *Carpenters Health & Welfare Fund of Phila. & Vicinity v. Silica Builders & Constr. Mgmt., LLC*, No. 09-587, 2009 WL 3199591, at *1 (E.D. Pa. Oct. 6, 2009).

The University contends that the Agreement is integral to the Complaint because it governs the parties' financial relationship with respect to tuition, fees, and refunds, which are the focus of the Complaint. (ECF No. 31, n.1). The Court finds that the Agreement establishes a clear process through which the University assesses tuition, fees, and services provided, which are the charges at the heart of this case. When a student accepts the Agreement prior to registration, the student agrees to pay tuition and fees that the University assesses as a result of registering for classes or in connection with any other services that the University provides. (ECF No. 26, Exhibit 1, ¶ 1). The University agrees to present the relevant tuition and fees to students on the University's PittPay platform, which the student promises to pay in a timely fashion. (ECF No. 26, Exhibit 1, ¶ 1, 4). The Financial Responsibility Agreement demonstrates a valid written agreement that Plaintiffs and the University entered into. Thus, the Court holds that the Financial Responsibility Agreement is a valid written agreement that controls Plaintiffs' breach of contract claim.[1]

Plaintiffs have not identified any provisions in the Agreement or any other contracts or policies that the University allegedly violated. Pennsylvania courts routinely dismiss breach claims under these circumstances. *See David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558–59

---

[1] Several courts have recently determined that breach of contract claims, like Plaintiffs', are incompatible with similar agreements and have dismissed these claims for failure to state a breach of contract. *See, e.g.*, *Horrigan v. Eastern Michigan Univ.*, No. 20-000075-MK, 2020 WL 6733786, at *4 (Mich. Ct. Cl. Sept. 24, 2020) (dismissing breach of contract claim because the University's tuition agreement "makes students liable for the full amount of tuition upon registration and/or the receipt of services, and it makes no promises regarding how those services are to be provided"); *Zwiker v. Lake Superior State Univ.*, No. 20-000070-MK, 2020 WL 8572097, at *4 (Mich. Ct. Cl. Aug. 31, 2020) (holding a claim for a breach of contract claim cannot be sustained where the language purportedly breached does not appear in the parties' Financial Responsibility Agreement).

(E.D. Pa. 2016) (holding while Pennsylvania law allows a student to sue a private university for breach of contract, the allegations must relate to a specific and identifiable promise that the school failed to honor). As an integral, valid, and written Agreement between the parties exists, the Court agrees that the Agreement governs the parties' contractual relationship, and the University has not breached any specific promises created by this Agreement. Therefore, the Court concludes that Plaintiffs have failed to state a claim for breach of contract with respect to the Financial Responsibility Agreement.

### B. Implied in Fact Contract

In the alternative to a claim under the terms of the Financial Responsibility Agreement, Plaintiffs claim that the University breached a contract implied in fact. Pennsylvania law recognizes the existence of an implied contract between universities and their students. A contract implied in fact arises where the obligations and intentions of the parties are not specifically expressed, but rather "inferred from acts in the light of the surrounding circumstances." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 210 (Pa. 2009). "Implied contracts . . . arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." *Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984); *see also Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. 1999) (holding a student-university relationship is contractual in nature and is not governed by a single document; it "is comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution").

In this case, Plaintiffs ultimately argue that the online education they received once the University transitioned to remote instruction in response to the COVID-19 pandemic was "subpar to in-person instruction," and it failed to provide the quality of education, services, and facilities

for which tuition and fees were paid.[2]   Plaintiffs assert the University used its websites, promotional materials, circulars, admission papers, and publications to represent the benefit of the integral on-campus educational experience it offers to non-online students.  (ECF No. 13, ¶¶ 38). Plaintiffs allege that these depictions and representations of student life created a certain expectation of the type of college experience that they would receive in return for their tuition and fees.

Although the University's website, promotional materials and other documents and publications reflect the myriad of opportunities students can take advantage of in ordinary times through their on-campus experience, these materials do not constitute identifiable and specific promises and are inadequate in the eyes of the Court to support a breach of contract, even one implied in fact.  *See Brucker v. State Farm Mut. Auto. Ins. Co.*, No. 17cv00084, 2017 WL 7732876,

---

[2] Pennsylvania courts, and courts across the country, have repeatedly rejected claims seeking damages for allegedly "subpar" education, or "educational malpractice" claims.  *See, e.g., Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 656 (E.D. Pa. 2012) (Plaintiff's claims "invite[] the court to enter into precisely the kind of generalized review of the entire course of instruction that so many other courts have wisely refrained from doing"); *Manning v. Temple Univ.*, No. 03-4012, 2004 WL 3019230, at *12 (E.D. Pa. Dec. 30, 2004) (holding Pennsylvania refuses to recognize a cause of action alleging that the educational institution failed to provide a quality education); *Swartley v. Hoffner*, 734 A.2d 915, 921 (Pa. Super. 1999) (noting it is not the court's place to second-guess academic decisions and judgments made in colleges and universities of the Commonwealth of Pennsylvania).  *See also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n.6 (1978) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation"); *Gills v. Principia Corp.*, 832 F.3d 865, 872 (8th Cir. 2016) (holding a breach of contract claim "raising questions concerning the reasonableness of the educator's conduct in providing educational services" is an educational malpractice claim and must be dismissed); *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1047 (9th Cir. 1999) (holding "an educational institution's academic decisions are entitled to deference"); *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) (refusing to recognize the tort of educational malpractice as "it threatens to embroil the courts into overseeing the day-to-day operations of schools").  Courts have rejected claims that present an invitation to superimpose the judicial system as the guarantor of educational quality.  Although Plaintiffs do not raise the type of educational malpractice claims that Pennsylvania courts have rejected, the Court notes that it follows suit with other courts' decisions rejecting such educational malpractice claims.

at *3 (W.D. Pa. May 26, 2017); *DiBonaventura v. Consol. Rail Corp.*, 539 A.2d 865 (Pa. Super. 1988). Plaintiffs have failed to identify any specific language from the University's websites, promotional materials, circulars, admission papers, and publications that exclusively promises in-person and live education. *See Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020) ("Plaintiffs have failed to plausibly establish that the contract between Occidental and Chloe included any right to in-person instruction."). These materials and publications merely describe the University's on-campus experience, which Plaintiffs received until the University was required to respond to and comply with Pennsylvania state mandates as a result of the COVID-19 pandemic. Further, Plaintiffs fail to cite to any specific and identifiable implied in fact promise that the University has failed to honor with respect to tuition, Mandatory Fees, or any housing or dining fees. Plaintiffs simply allege that payment of tuition, housing and dining, and Mandatory Fees were intended to be in exchange for the experience depicted and described in the University's publications and materials.

The Court holds that the depictions and descriptions of student life that the University published do not give rise to an implied in fact contract. They offered nothing more than a generalized and non-specific impression of typical student life. Even in normal times, however, those materials offer only a subjective view of what campus life *may* be. It goes without saying that each student's experience will be different. Plaintiffs had no enforceable right to an experience similar to those depicted in the University's materials. The University as much as its students had to pivot and change to adapt to circumstances unforeseen by everyone only weeks and days before the COVID-19 mitigation measures were imposed. Plaintiffs were, nevertheless, given the chance to complete their semester and earn college credits. The Court holds that there was no breach of an implied in fact contract.

### C.  Unjust Enrichment

Next, the University argues that Plaintiffs' unjust enrichment claim is foreclosed by the existence of a contract between the parties and Plaintiffs' inability to plead an "unjust" retention of funds.  (ECF No. 26, pp. 17–18).  Plaintiffs, however, assert that at the pleading stage they may allege an unjust enrichment claim in the alternative.  (ECF No. 28, pp. 17–19).  Although it is proper to plead an unjust enrichment claim in the alternative, Plaintiffs' unjust enrichment claim must be dismissed as the parties' relationship is governed by a contract and Plaintiffs have not adequately alleged that the University was conferred with an unjust benefit.

Under Pennsylvania law, unjust enrichment is an equitable doctrine that requires: 1) the plaintiff conferred benefits upon the defendant; 2) the defendant realized those benefits; and 3) the defendant accepted and retained the benefits under circumstances in which it would be inequitable for it to retain them without payment of value.  *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995).  "The doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract . . . ."  *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006).  Thus, an unjust enrichment claim cannot stand where it addresses conduct within the scope of the parties' agreement—even if the contract does not have a precise term governing the dispute at issue.

In this case, Plaintiffs' unjust enrichment claim must fail.  Plaintiffs assert in the First Amended Complaint that the parties' relationship is governed by a contract.  Plaintiffs' allegations are within the scope of the parties' alleged contractual relationship, as instruction, tuition, and fees are all central to the parties' relationship.  Because the parties' relationship is governed by a contract, the Court holds that Plaintiffs cannot maintain their claims for unjust enrichment.

Further, Plaintiffs do not plausibly plead that the University's retention of funds was unjust, as they must, to sustain an unjust enrichment claim under Pennsylvania law. *See D.A. Hill Co. v. Clevetrust Realty Invs.*, 573 A.2d 1005, 434 (Pa. 1990).  The University continued to provide instruction to students throughout the Spring 2020 semester.  Despite the challenges presented by the COVID-19 pandemic, and while complying with the mandates issued by the Commonwealth of Pennsylvania, students of the University continued to receive an opportunity to earn academic credits.  Even without the ability to experience courses and extracurriculars in person, even though their college experience was different than they anticipated (as 2020 was for every American), Plaintiffs ultimately continued to receive education and earn credits from a top-tier institution. That is what they paid for.  Plaintiffs do not allege that the University's costs were reduced by virtue of the change to online instruction or that it somehow profited from the COVID-19 pandemic at their expense.  Plaintiffs have failed to allege that the University unjustly accepted and retained benefits during the Spring 2020 semester.  Accordingly, the Court concludes Plaintiffs fail to state a claim for unjust enrichment.

### D.  Conversion

Lastly, the University argues that Plaintiffs' conversion claim is barred by the Financial Responsibility Agreement.  Plaintiffs, however, assert once more that they may allege a conversion claim in the alternative.  To prove a claim for conversion under Pennsylvania law, a plaintiff must show: 1) the deprivation of their right of property in, or use or possession of, a chattel, or other interference therewith; 2) without their consent; and 3) without lawful justification. *Pioneer Com. Funding Corp. v. Am. Fin. Mortg. Corp.*, 855 A.2d 818, 827 (Pa. 2004).  Although a plaintiff may allege a conversion claim in the alternative under FED. R. CIV. P. 8(d), the Third Circuit has made clear that under Pennsylvania law, "a claim for conversion cannot stand when there is a contract

between the parties that governs the same disputed funds . . . because the dispute is better handled as a breach of contract." *Scott v. PNC Bank, Nat'l Ass'n*, 785 F. App'x 916, 920 (3d Cir. 2019). A claim of conversion must further be supported by alleging that defendant has breached duties imposed by law as a matter of social policy. *McKesson Corp. v. Campbell*, 134 A.3d 502 (Pa. Super. 2015).

In this case, Plaintiffs concede the property at issue, in the form of funds, is governed by a contract. Although it is proper for Plaintiffs to plead their conversion claim in the alternative, their conversion claim must be dismissed as the parties' relationship is governed by an agreement and Plaintiffs have not adequately alleged that the University converted Plaintiffs' property in an unlawful manner. Plaintiffs have not alleged there was any duty arising from social policy for the University to provide in person instruction, or to refund Plaintiffs' tuition and fees. The property alleged to have been converted was initially acquired in a lawful manner; through paying tuition and other associated fees for the Spring 2020 semester. Any duties the University owed Plaintiffs in connection with the facts alleged in the First Amended Complaint are the product of contract— making the tort of conversion inapplicable. Therefore, the Court concludes that Plaintiffs' fail to state a claim for conversion.

## IV.    CONCLUSION

Plaintiffs and other college students similarly situated were undoubtedly impacted by the COVID-19 pandemic. The unforeseen circumstances relating to the pandemic and the response of governments and institutions were just that—unforeseen. When the governor of Pennsylvania declared a state of emergency, the University's hands were tied as it was required to act in accordance with the measures put in place. Student life on-campus, including extracurricular activities, events, and university services, was severely disrupted. The Court is sympathetic to

these students and understands that students faced a drastically different college experience than anticipated.  Indeed, the University, no less than its students, had no reason to anticipate that the pandemic would cause such a drastic disruption to the ordinary flow of student life.  Nevertheless, not every unfortunate situation is actionable.  The Court's analysis must be based solely on the law governing Plaintiffs' claims.  Here, in light of the law of the Commonwealth of Pennsylvania, Plaintiffs have not pled plausible claims for breach of contract, unjust enrichment or conversion.  Thus, Defendant's Motion to Dismiss (ECF No. 25) is granted in its entirety.  Orders of Court will follow.

BY THE COURT:

_____

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

4-27-21
_____
Dated